All rise, please. Court is in session. Our next case is 18-1588, Scottsdale Insurance v. United Rentals, and 18-1593, Scottsdale Insurance v. United Rentals. Good afternoon, Your Honors. Barbara O'Donnell for United Rentals. With the Court's permission, what I would like to do for our 15 minutes is take 7 minutes for United Rentals' appeal, which I will argue the balance of 8 would go to my colleague, David Schroeder, who will address Scottsdale's cost appeal. We would reserve 3 minutes of that 8 for rebuttal. Okay. All right. So, on appeal, on United Rentals' appeal, we request that this Court affirm that portion of Judge Woodlock's March 2018 decision that held that United Rentals is entitled to indemnification coverage as an additional insured under the policy that Scottsdale issued to its named insured, Gomes Services, for settlement costs that were incurred to resolve an underlying case. However, the Court should reverse that part of Judge Woodlock's decision that held that, in fact, Scottsdale doesn't have to pay any portion of United Rentals' settlement costs because of the determination that the Scottsdale policy is excess over United Rentals' self-insured retention or deductible obligations under its two potentially- And that all turns on that footnote in Boston Gas? Indeed it does. Indeed it does. So you want to walk us through how you read that footnote? Yes, most certainly. And that is an issue of first impression, as Judge Woodlock notes. And he notes also that the clear weight of authority elsewhere would support United Rentals' position that self-insured retention, deductible obligations under so-called fronting policies are not valid in the collectible other insurance because they're the insured's own money. They're the insured's own risk. Counsel, can I ask you a preliminary question? You've suggested in your brief as an alternative argument that we consider certifying this question to the SJC. Was any such a request made by you in the District Court? No. Okay. No. And so back to the issue of Boston Gas. Our position is that rather than rely on the statement of dicta in footnote 7 in that decision, and that decision deals with the material- Before you get to where we shouldn't pay attention to the footnote- Okay. Do you read the footnote to conclude that we should treat this policy the way Judge Woodlock read the footnote to treat it? Not for a priority of coverage determination. All that footnote says in dicta, where the court is speaking in very general terms about how all sorts of insurance policies can operate, is the court there, the SJC, said that in certain circumstances a self-insured retention could be deemed a primary layer over which an excess policy sits. In Boston Gas, though, the court was not dealing with the priority of coverage issue that we have here, where we have a concurrent policy situation with two or more policies responding to the same risk. In fact, the SJC in Boston Gas took care to indicate that other insurance provisions, such as those before this court, have no bearing on the issues that the court was addressing there, which had to do- You know, you've been consistently referring to that as dicta. I wonder if in the context of the Boston Gas case it's dicta. It's clearly a different situation than we have here. I'm not at all sure that it's dictum in the Boston Gas opinion. Well, respectfully, Your Honor, the court in that footnote, it's in a very preliminary portion of the decision- That's true. Where the court is simply just basically talking about how insurance policies apply. But on that point, and I think if I'm reading it right, that footnote is appended to a discussion that precedes the description of the other insurance provision? Yes. And that's helpful to you, I take it? Yes. Yeah. Yes, and that when then the court, in distinguishing the issue before it, which is whether policies along a horizontal spectrum in that situation involving progressive environmental contamination should be required to contribute on a pro rata or joint and several basis, the SJC in that decision, again, says this isn't a priority coverage issue of the concurrent policies, how they ought to apply. So our position is that in deciding this issue of first impression, rather than apply or rather rely upon that footnote, what Judge Whitlock should have done and could have done is follow the analytical framework that this court applies- But can I just, I take that point, but I guess just trying to take the substance of the footnote to try and prophesy what the SJC might make of this. They do seem to treat self-insurance as insurance. And isn't that all we're really interested in? Is self-insurance insurance? Because we're construing the word insurance in the policy. And if it is valid and collectible insurance, then Judge Whitlock is right. So you need this footnote, notwithstanding that it refers to self-insurance as insurance, to somehow not be a conclusion that it means to say that the term insurance in a contract includes self-insurance. Well, Your Honor, what I would say is that for purposes of the particular issue that's before the court, the priority of coverage issue with concurrent policies where you have competing other insurance provisions, as the First Circuit held in the Stratford School Board decision, Stratford v. Employers' Reinsurance, self-insured retention and deductible obligations are not insurance. But in Stratford, we were talking about what we thought the law was in New Hampshire, not in Massachusetts. Yes, that is true. However, in that decision, what the court said is that in predicting what New Hampshire courts would say when New Hampshire courts had not addressed that issue, it was obvious to the First Circuit that the self-insured retention obligation, and that court uses interchangeably the word deductible, when it's the insured's own money, that they are not valid and collectible other insurance. And Stratford's also noteworthy because the First Circuit there says, in this priority of coverage concurrent situation, if the other insurer, here's Scottsdale, their Employers' Reinsurance, wants to have its policies, other insurance provision, applied to specialized forms of risk management, such as self-insurance or deductible, they should use that specialized language. And Stratford First Circuit decision notes that language was used there. But we have here, which we didn't have in Stratford, the highest court of the relevant state, giving us some guidance as to what it thinks counts as insurance. For a different purpose. And in fact, in... I understand that the legal question they were deciding there was not a construction of the phrase valid and collectible insurance. Right? That's right. But they described the thing as insurance. And... So what would be our reason for thinking that the SJC wouldn't consider it to be insurance? They don't refer to it as not insurance or surety or any of the other things that these other courts have said as to why it doesn't constitute valid and collectible insurance. Right. So all these different mechanisms of handling one's own risks can take an array of forms. And this court has recognized it, as have other decisions around the country. When you're talking about this situation of these concurrent policies, what insurance policy has to apply to that risk? It is material to say for that priority of coverage, a self-insured retention could be insurance in that vertical situation. And United Rentals wouldn't argue with that. For purposes of its own tower of vertical insurance, a self-insured retention could be effectively the first layer. The first risk management layer. Then you could have that be in a primary policy or you could have other vertical policies over and above it. But for the priority of coverage competing other insurance situations that we're dealing with here, that phrase, other valid and collectible insurance, is meant to mean other insurance rather than the insurance on money. And that's what courts around the country have held in that widespread majority position. And it's what the First Circuit noted in Stratford. And that analysis where they were then predicting how New Hampshire court would resolve the issue because there was likewise no New Hampshire authority, it's very relevant that the court there said it's obvious that that self-insured retention and the courageous policy was not insurance and would not be treated as insurance for that priority of coverage. And they weren't relying on New Hampshire law. They were relying upon what meaning should be afforded that policy language in keeping with the approach taken around the country. I think everybody should have done the same respectfully. Thank you. May it please the Court. David Schroeder on behalf of Cross Appellee United Rentals. I was going to address the issues in Scottsdale's cross appeal, but I wanted to add one thing to the question that you just asked. And that is in the situation in Boston Gas where you have a self-insured retention below an actual insurance policy, the insurance company above that self-insured retention has bargained to issue a policy that's above $250,000. They don't really care necessarily whether it's a self-insured retention or another policy. And in fact, in other cases, sometimes there's a self-insured retention and then the insurer goes out and insures it later. So treating that self-insured retention in that situation where it's below an insurance company that has negotiated to issue their policy above a $250,000 limit makes sense to treat it exactly like you would an insurance policy because they don't care who's paying the first $250,000. There are two issues that Scottsdale raises in its cross appeal, both of which are related to the blanket additional insured endorsement in its policy. The first is they're saying that there wasn't a contract between United Rentals and Gomes that required United Rentals to be named as additional insured. We think they've waived that argument because of the settlement that we reached after the judge issued his decision on the duty to defend. The judge specifically found that the contract that existed between Gomes and United Rentals indicated that Gomes had to name United Rentals as additional insured. When the settlement agreement was entered into, Scottsdale specifically waived the right to appeal any part of the judge's decision related to the duty to defend. Therefore, we think that issue is just off the table. The second issue is related to whether it's the liability. The exact phrase in the additional insured endorsement is that United Rentals is only an additional insured for liability due to bodily injury. On that first point where you rely on waiver, that's not all you rely on. Oh, no. We have other reasons, but because my time is short, I don't. You want to emphasize that reason. I'm happy to, if you think that's more important than the other one, I'm happy to go back and explain the other reasons. Actually, the main reason that we think that they also lose on the question of whether it's bodily injury versus liability that has to be caused by Gomes' acts or omissions is that if you look at what their claim handler, the evidence that we provided from Pam Downey and from Mr. Morrison, who was in their TCU unit, they basically admitted that both of those requirements, that the contract and that it be bodily injury that has to be caused in whole or in part by Gomes' acts or omissions were met in this case. I know they say in their reply brief that Ms. Downey's memos really should not be in judicial admissions because she didn't have the authority to make those decisions, but Mr. Morrison clearly did, and he agreed with her. And then she issued the September 25, 2012 Reservation of Rights letter in which she states that United Rentals qualifies as an additional insured. So the arguments, when they say that Scottsdale was still reserving coverage, yes, they were. They were reserving coverage on two issues. One was whether their policy was access to ours, and secondly, on the question of whether the actual facts of the case would indicate that Mr. Ayotte's bodily injury was in fact caused by Gomes' acts or omissions. And in this case, it was absolutely clear that that was the case because Gomes' driver drove the scissor lift backwards and ran over Mr. Ayotte. So there's no question that Gomes was going to be at least partially negligent in this case. So that's an important, those admissions made by Ms. Downey and by Mr. Morrison are critical on both of the issues that they raise in their cross-appeal. What do you make of their arising out of as opposed to cause argument? Okay, so they're relying on cases that use the language caused by without the addition of caused in whole or in part by. There's no such case that uses the caused by whole or in part formulation that comes out the opposite of yours. In terms of the causation element as opposed to whether it modifies bodily injury or liability? In terms of the relevant question of whether vicarious liability is all that's being talked about. Yes, there are. I haven't counted them, but I would say there's probably a dozen cases that go a long way and there's maybe three cases. No, no, I'm saying in cases in which there's use of caused by language and you want to say that's more than vicarious liability, right? The, it's, where the vicarious liability comes in is... Correct, absolutely. And you say that you can get there even though the language of the policy refers to caused by rather than arising out of. Right, but it's not... And then you say that's because of in whole or in part. Right, but it's not... If in whole or in part were not there, would you have a problem? The, where the vicarious liability issue comes in is whether it's our liability or Mr. Ayotte's bodily injury that has to be caused in whole or in part. If it's our liability, then it is a vicarious liability statement. I thought one of the reasons why we were construing it in your way, consistent with how Judge Woodluff construed it, was because of the inclusion of the in whole or in part language. Yes, the in whole... Correct, that, okay, now I understand where you're coming from. Okay, so yes, by the inclusion of that language, it can't possibly be a vicarious liability standard. And there's no case that has such language that comes out the opposite of the way you would like it to come out. Unfortunately, that's not true. So there, as I said, there's like, I think they cite all of them in their brief. There's three or four cases that come out the other way. Using in whole or in part. Yes, that have the in whole or in part. And the only thing I'll say about the difference between their cases and our cases is that those cases, they tend to gloss over the significance of all the things that we've just been talking about. Whereas in the cases that we cite, like Thunder Basin and the case of the judge, I think it was the Shawmut case, there's really some careful analysis by the courts as to why it shouldn't be a vicarious liability standard and it should be. And those are cause cases? Those are caused in whole or in part cases. Got it. Yes. So we've got a split on caused in whole or in part. Some cases go one way, some go the other. The vast majority go one way and there's a few that go the other way. And I see my time is up. So for these reasons, we would ask you to affirm the trial court on the issues raised in Scottsdale's cross appeal. Thank you. Thank you. Gary Cole with Kennedy CMK for Scottsdale. Having sat here for a while, do you have questions to start or should I just pick a place and go forward? Pick as you go. We'll tell you that you started in the wrong place. Okay. Perfect. One thing I would, I'm going to start with the priority of coverage issue. And I think Your Honor asked a question, does it all turn on the footnote in Boston Gas? I don't think it all turns on the footnote in Boston Gas. What Boston Gas tells you is that a primary policy with a deductible or an SIR is still first dollar coverage, that it's still insurance, that an excess policy with an SIR, the SIR is basically the primary layer. What you have to look at, and in this case, you have plenty of it. I mean, this tends to get complicated, but it doesn't have to be complicated. Just look at the documents. You know, the ace policy that they want to call a fronting policy, there's no ace witness in this case to testify it was a fronting policy. We cited you to a case where ace took the position that it's not a fronting policy, that it is obligated to provide coverage. The ace policy that we attach has the same GL form that my Scottsdale policy has there. Why would that matter? What's that? Why would the name matter? What would the name matter? Because what they're trying to say is it's... It can't be the case that anything you label insurance, therefore, is within the scope of valid and collectible insurance. No, Your Honor. No matter how remote from real insurance it is. It matters because they treat it like it's not a real insurance policy. This is the whole point. The certified question says when a fronting policy, et cetera, there's nothing in this record. There's no expert who said it's a fronting policy. There's no ace person who said it's a fronting policy. They say it's a fronting policy, but it's not. The policy obligates ace to pay. It obligates ace to defend and pay. If they don't pay, if they do pay, ace can step in if it wants to step in. It is first dollar coverage on that policy. If it chooses to be, and it's obligated to be when they don't pay. So it's not a fronting policy. And it would have been helpful to have testimony from ace to say that, but it doesn't exist. And like I started to say, there's a case in our brief where ace took the exact opposite position on the same endorsement. All it does is set a deductible. And instead of the deductible being $500 like under auto coverage or $10,000 on a general liability policy, this one's $2 million. And the happenstance of that I think is what Judge Woodlock focused on. Judge Woodlock said it doesn't really matter what the SIR is or what the deductible is. It's still an insurance policy. And so you've got more than the footnote that appears in Boston Gas. You also have my policy. When they say the deductible is the same as the liability, that's just adventitious. That just happens to be the case here. But it's not as if it's designed to be that case in all cases. This deductible endorsement sets out how the policy is supposed to work. The $2 million is, like I said, it's just not the thousand you have on your car. It's $2 million in this case. But your point is that that policy is as much valid and collectible insurance as if the exact same policy was written and the deductible had some other number other than $2 million. Exactly. It's an insurance policy. And so is the other one with the SIR. They're both insurance policies. The Stratford case specifically defined insurance and differentiated it from SIRs as the difference being there's actually an insurance policy issue with a deductible. Does that mean then the footnote is the wrong thing to focus on? In Boston Gas? Yeah. Why does the footnote help you on your logic? My logic is you have more than just the footnote. That's not my question. How does the footnote help you on your logic? I think it signals a very clear understanding by the Supreme Judicial Court that insurance policies can take a lot of different forms. What they were wrestling with. You're not relying on it for the idea that self-insurance is insurance, in other words. Sure am. Sure am. I think it's self-insurance. Sure am. Boston Gas Court says it's the primary layer under the excess policy. We're talking about in one of these ACE policies not a self-insured retention. We're talking about a deductible. That is a different thing than a self-insured retention. There's two ACE policies. My policy says we're excess to any primary, any excess, any concurrent, or any other form whatsoever. Is your access to all the cases from the other states, Stratford included, are all distinguishable because of the nature of this particular policy? I think in our brief we ran through every single one of them, and almost every single one of them involved the situation like in Stratford, which was a pooled insurance arrangement where a bunch of different entities got together and basically put money in a pot and then had insurance sitting above it. There was no policy associated with that. That I read as the difference. They took the Webster Dictionary definition of insurance in Stratford, you did, and then distinguished that from where a real insurance policy is issued and there's a deductible on it. I think that's what Judge Woodlock focused on. I think what he said was this is nonsense. I'm looking in this record and I'm holding insurance policies in my hand that have policy number, that have a jacket attached to them, that have exclusions and endorsements and limits and all kinds of things, policy periods, and they're telling me it's not an insurance policy. I'm not buying it. The idea, I thought, I had to shift the risk. So with the fact that it has all those things you just mentioned, the other courts that I have read that treat certain things as not insurance go to the test of does it require a shift in risk. Are you saying this policy does or does not require a shift in risk? Both of them do. Both of them shift risk. Do you agree that's the only relevant consideration? In other words, something that doesn't shift risk but has got a jacket and a name called insurance, it's irrelevant, right? I don't know you mean some of it. You mean there are things out there that have a jacket but don't shift risk? I've been doing this 30-something years, and that's not generally what I see, even specifically what I see. Policies get issued by companies, they get a premium for them, and then they provide coverage. For instance, United Rentalists can take this policy and use it as financial proof to any vendor whose property they want on this AMGL coverage. You were saying that we don't have any basis for saying this is a fronting policy. Right. If it were a fronting policy, it would be a question of whether it shifted risk. Fronting policies don't necessarily shift risk. And then that would raise the question of whether they're insurance. Right, but they don't necessarily shift risk. I mean, they definitely shift some risk to the insurance company. It depends on how they're structured. Okay, but even still, that might then start to raise the question, as these other state courts have concluded, as to whether such a policy, even if it has a jacket and is called insurance, constitutes valid and collectible insurance for another insurance claim. I suppose that if there were zero shifting of risk, if the document that people were relying on said nothing about the insurance company owing an obligation, you could argue that there was no shifting of risk. I don't think you can argue that on the ACE policy. And I will tell you, the fronting arrangements that are common involve foreign insurers that want to write here through licensed insurance companies, and the insurance company puts its paper out, and they reinsure 95% or 98% of it back to these companies and send the premium to them. A lot of companies went bankrupt because the London market, when a lot of the London companies went bankrupt, those companies on the fronting policy, instead of having 95% back behind them, had 30% behind them. And those companies wind up being on the hook because it's their paper on the street. And that's what ACE did. ACE put its paper on the street. And nobody from ACE came in. There's nothing in this record where ACE says it's a fronting policy. There's no expert that says it's a fronting policy. I've been doing it so long. It's not a fronting policy. So your account is this is a normal, regular, standard issue insurance with a very, very high deductible period? It's got a high deductible. Is that it? It's got a high deductible. And the other one's got a high SIR. But under the right circumstances, ACE is $1. And for that reason, my policy is pretty express. Give us an illustration of the right circumstances where ACE would be $1. If it wanted to step in. It has the right to step in and settle or defend any claim. It has the obligation to settle any claim. Give us an illustration where involuntarily it would be $1. If, well, if United Rentals didn't pay the deductible, ACE could come in and pay. Now, I obviously haven't read the entire policy. The policy does provide that if United Rentals does not pay pursuant to the deductible, that ACE is on the hook. Yes. And does United Rentals then have a debt to pay back ACE in consequence? Yes. ACE can collect it. JRA 1159 in our appendix. In the event you are unable to pay the deductible amount or any portion thereof, our obligation to pay damage to satisfy a judgment or pay a settlement shall include the deductible amount or any portion thereof. But then is United Rental then on the hook for ACE to recoup from United Rental for ACE having to come in and pay it first? Sure. I think so. But that's not a normal insurance. I don't understand myself to be contracting with an insurance company for them to pay out the loss and then after they pay it out, they can come back and collect that amount from me. Depending on how your deductible provision is worded, it's the same exact thing. If you have a $5,000 loss on your car, the insurance company will charge you back your $1,000 deductible. And so it's the same thing. But it does shift the risk because... Yes. Okay. And that provision goes on, but the deductible... Just in a more simple-minded way, just so I get it, if... If it's above the deductible... ACE is paying. So why isn't that just your easy answer? This claim is settled within the deductible. But that's irrelevant to what the nature of the policy is. That's what I've been saying all along. But that's what I'm saying back to you. We don't have to get into this issue of how it works under the amount. In other words, so long as however high the deductible is, I mean, I suppose if it was a completely fanciful number or something like that, but you're just saying this is a standard issue and it's just happenstance that we have a claim that's under the deductible, or after the deductible, but that doesn't change the nature of the policy. And that's what makes it real insurance. That's what makes it collectible insurance. But that makes the footnote in Boston Gas irrelevant. But the reason we have to ask the question in this case is because the limited liability and the amount of the deductible are equal. So there is no circumstance or time to see any circumstance where Ace would be liable to pay, where the insured wouldn't be liable to pay in the first instance. Now, there are plenty of instances where the insured wouldn't pay or couldn't pay and Ace would then have to step up. That's a pretty big difference. That means everything does turn on what happens under the deductible. That same provision says, however, our obligation to pay under this policy shall not exceed the limits of insurance. The limits of insurance are $2 million. The deductible is below the limits of insurance. If there's a $4 million claim and they pay the $2 million deductible, Ace is paying $2 million. It's real insurance. It's a real insurance policy. In that scenario, Ace is paying $2 million with its insurance monthly. No. Ace is paying $2 million and United Rentals is paying $2 million. Oh, if there's a $4 million claim. Yes. Yes. Yes. Because the limits of the liability is the limit of the deductible means $2 million on top of the deductible, not at the deductible. Right. Right. That's why it's a deductible. That's different. That's pretty different. But then if I'm right, we don't have to worry about the Boston Gas footnote because this is just a simple case of there's insurance with the deductible. I have one case on this deductible endorsement and it's Ace telling you that it's real insurance. Boston Gas happened to deal with SIRs and deductibles and call them insurance. And so I think that's relevant to the consideration. It hurts you, but it's rather. Does it control? I'm not too sure because it's not on point. It's not this case. This case involves that policy and that policy provides real insurance coverage. But the limit of this insurance policy is $4 million, not $2 million. $2 million plus a $2 million deductible. Or a $2 million deductible and then $2 million on top of it. I see. Okay. And it's on the declarations page. And that's my understanding of how this policy works. And that's what they said. That's how they said it works in the Ace case. Do you have anything to say in the whole or in part of the point? Sure. I think we all went to school. This has become a little causal for me. I argue with people all the time. But we all went to school and they actually taught us how to diagram sentences and do grammar. Do grammar. How's that? Liability for bodily injury caused in whole or in part by. For bodily injury is a prepositional phrase. Prepositional phrase only under the rarest circumstances can be the object of a sentence. So the object is liability. What effect are you giving to in whole or in part? Caused in whole or in part just means that if, let's say, United Rentals is vicariously liable for the damages that Gomes caused. And it's directly liable for the damages it caused. And some jury says 50-50. You have United Rentals, you have 50% of the liability. Gomes, you have 50% of the liability. If for some reason there's a verdict on United Rentals that basically relates 100% of the loss on United Rentals, they're an additional insurer for the 50% that's on Gomes because that's the 50% that was caused in whole or in part caused in part by Gomes. Just to read the sentence, I thought it was the liability is whole or in part. Liability caused in whole or in part by the named insured. Right. So the liability, if it's vicarious liability, isn't that an all-or-nothing proposition? It's an all-or-nothing proposition for the portion of the liability that's not the additional insured's direct liability. The issue in this case, the problem in this case for United Rentals, was that Gomes didn't get sued by the plaintiff. United Rentals got sued by the plaintiff that alleged failure to maintain the machine and negligent hiring in hiring Gomes. There was no allegation by the plaintiff that Gomes did anything wrong. United Rentals created that allegation by third-partying Gomes in. So on the day of judgment, the plaintiff's only getting a judgment against United Rentals. It might be for 100% of the loss, but then Gomes, through the third-party complaint, might wind up being 50%. So as an additional insurer, United Rentals would get insurance for that in part caused by Gomes portion of the loss. Another way of looking at it is we would have just paid Gomes' piece and United Rentals just would have paid its piece. Because at the end of the day, if they got the ruling on Gomes, we just would have whacked the verdict up. What happens in this situation is that kind of got thrown out the window by Judge Woodlock because he wasn't buying the vicarious liability nature of this. But you can't read it any other way. This particular form came out in 2004. There's an ISO circular on it. The ISO circular on it goes all the way through the vicarious liability of it. Last question because we're over. Can you just respond to the waiver point that was made? So we got Judge Woodlock's decision. We entered into negotiations to try to settle the defense cost portion of this case for a number of reasons. My client didn't feel like spending God knows how much money it was going to take to actually we were probably going to have hearings on it to go through bills. The client didn't want to put Judge Woodlock through that. We frankly didn't think Judge Woodlock would want to go through it. We talked with David. We came to a number and resolved the defense cost portion of the case. Never would that case have settled. Never. If we were waiving our ability to challenge the additional insured ruling on indemnity. It's in all the briefs. Defense is broader than indemnity. We can have a defense obligation. Potentially, United Rentals is an additional insured for purposes of defense. United Rentals can be an additional insured for purposes of defense. Potentially, Gomes may have caused them vicarious liability. Not on the cost issue but not on the threshold question about what the contract between Gomes and United Rentals says. That's fixed, isn't it? On the contract issue. That's what he was saying was waived. The contract issue. Yes, no. No, it's not waived. Now, one more sentence. Why not? Because that was not the settlement that we reached. We reached a settlement solely on the defense aspect of the case. That's not what the agreement that you signed. Absolutely not what the agreement says, Your Honor. Absolutely does not say that. Does not say that. But if you read the agreement front to back in context, all it's dealing with is the defense. Thank you. Thank you. So a few points on rebuttal. First, still going back to this first impression issue of whether a large deductible or self-insured retention is other valid and collectible insurance. That is the unresolved issue. And as Judge Woodlock noted, that is an issue where both of the ACE policies are fronting policies. It's United Rentals' own money. And a couple things I want to point out on that. The two policies, the CGL and the ACE Ultimate Network. If there's a $4 million claim, does ACE have to pay $2.1 million up to $4 million? No. And so under the ACE CGL policy, which, by the way, is not the policy we think applies here, and I can come back on that if I can save my seconds. But take Judge Barron's question. Assume a situation where only the ACE CGL policy applies. There's a $4 million claim. You settle it for $4 million. Who pays the money? That policy, that ACE CGL policy, has a $2 million limit. That is the limit of the policy. And the deductible is $2 million under that policy. So it is a funding arrangement. It is not a $4 million policy. It is, by its express terms, and I can direct the court to that, that is our make sure I have the right policy. That is in joint record appendix, and you can see it on 1136. It's a $2 million policy with a $2 million deductible. So you're just saying he's just flat out wrong in saying it's a $4 million policy? He is mistaken. Okay. Yes, he is. And the evidence that's in the record is... Does anybody have an idea how we're supposed to figure out who's right between those two positions? Well, the record appendix will show you. The policy, by its very term, is a $2 million policy. It's a current law. It's just odd because the insurer is telling you he's giving you $2 million for free, and you're saying, no, I don't want it. Well, he's got the Scottsdale policy. He can't speak to the authority today's policy. That's true. And then the ACE ultimate net loss policy is the one with the self-insured retention of $2 million against $3. On the Stratford decision, counsel respectfully is also in error in trying to say it wasn't another policy. Two issues were before the court, the First Circuit in Stratford. One was whether the $75,000 self-insured retention on the coercious insurance policy, an insurance policy, should be deemed other valid and collectible insurance. First Circuit said, obviously not. It is not other valid and collectible insurance. That was a self-insured retention in a policy. The fact that it's in a policy doesn't defeat this first impression issue that this court needs to be deciding. So he's talking about a second issue in Stratford, this risk pool, where the court there, too, said that also wasn't self-insured. Could you just answer his account of how in whole or in part can be read consistent with vicarious liability? Yes, although I'm taking over my colleague's argument. But the cost in whole or in part, again, we go back to the fact that it's bodily injury that has to be caused in whole or in part. And it is uncontroverted that the bodily injury here was caused by Gomes' operation of the lift. So the causes of action that are asserted in that underlying case don't matter. Also, since you raised that question, Your Honor, respectfully, counsel also erred in saying that Gomes was not a direct defendant in that case. They are a direct defendant in that case. Both United Rentals and Gomes were both direct defendants. And they both had to settle with the plaintiff to resolve their respective liability, direct, indirect, vicarious, or otherwise. Thank you. Thank you, Your Honor. Does anybody reserve more time? No. Then that is it.